**Edna ACOSTA SEPULVEDA, Plaintiff,**

**v.**

**Pedro HERNANDEZ PURCELL, Executive Director of the Land Administration of the Commonwealth of Puerto Rico, in his personal and official capacity, Defendant.**

**Civ. No. 86–0862(JP).**

United States District Court,
D. Puerto Rico.

Jan. 12, 1988.

---

José Ramón Pérez Hernández, Old San Juan, P.R., for plaintiff.

María L. Jiménez Colón, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

Edna Acosta Sepúlveda brought this action for back pay, damages, injunctive relief, and declaratory relief pursuant to 42 U.S.C. § 1983. She alleges four causes of action, two under the first amendment and two under the fourteenth amendment. Acosta was demoted from her position as Assistant Executive Director in the Land Administration for the Commonwealth of Puerto Rico, a trust position, to Personnel Director, a career position. She was subsequently dismissed from her position as Personnel Director. These adverse personnel decisions, she claims, were based on her political beliefs and affiliation with the New Progressive Party (NPP) and Acosta alleges a first and fourteenth amendment violation as to both job changes.

The matter was tried to the Court, without a jury, and both parties presented wit-

nesses and submitted documentary evidence. After careful consideration of the evidence, and after due deliberation, the Court now makes the following Findings of Fact and Conclusions of Law. Fed.R.Civ. P. 52(a).

## FINDINGS OF FACT

1. Plaintiff Edna Acosta Sepúlveda is a former employee of the Land Administration of the Commonwealth of Puerto Rico.

2. Defendant Pedro Hernández Purcell is, and was at the time of the action that gave rise to the complaint, the Executive Director of the Land Administration. The Puerto Rico Land Administration is a governmental agency created by Law No. 13 of 1962, codified at 23 L.P.R.A. § 311 et seq.

3. Acosta is a member of the New Progressive Party (NPP), and her political affiliation was known by her co-workers in the Land Administration. The NPP lost the general elections held in Puerto Rico on November 6, 1984, and the control of the Executive Branch of the Commonwealth Government which it held for the previous eight years. Defendant is a member of the Popular Democratic Party (PDP) whose candidate, Rafael Hernández Colón, was elected Governor of the Commonwealth of Puerto Rico in the general elections held on November 6, 1984, and who at present holds said office. Pedro Hernández Purcell was appointed Executive Director on April 1, 1985, after the Governor had taken office on January 1, 1985.

4. Acosta graduated from the University of Puerto Rico in 1978 with a bachelor of arts degree in Finance and Business Administration. Thereafter, and while a public employee, Acosta went to law school and earned the degree of Juris Doctor.

5. Acosta worked in the private sector for the Gas Products Corporation from August 27, 1979, to March 31, 1980, in the Accounting Department. Among her functions were the receipt of valuables and application of payments from clients toward regular accounts. She was also in charge of the Group Medical Plan from the Travelers Insurance Company, in which she handled and coordinated the Plan and provided follow up to claims from employees. These duties involved maintenance of personnel records and dealings with the corporation's employees. This experience is sufficient to be incorporated as an integral part of the four-year personnel administration requirement for the post of Personnel Director.

6. Acosta began work with the Commonwealth Government on July 1, 1978, with the Social Services Department, as Administration Technician. She prepared federal proposals, supervised federally funded projects, coordinated Social Security contributions and benefits, reported how federal funds were distributed, and followed up on projects with the Committee to Fight Crime and the Right to Work Administration.

7. Acosta began work with the Land Administration on April 1, 1980, as Personnel Director, a trust position. Her duties included coordinating the administrative and technical functions of the personnel area regarding classification, appointments, selection, training, retention, and supervision of four employees. She held that position for three years and three-and-one-half months until June 15, 1983, when the position was changed to a career position. She held this position until December 1983, the date she was appointed to Assistant Executive Director of Management, also known as Director of Administration, a trust position. That position involved the coordination of personnel and the inventory of land. She was directly responsible to the Executive Director of the Land Administration. On June 15, 1985, defendant Hernández, the Executive Director, demoted Acosta to her previous position as Director of Personnel with a reduced monthly salary from $2,114.00 to $1,749.00, a $365.00 decrease. Acosta did not grieve this personnel action.

8. Acosta was replaced as Director of Administration by Mr. Ramón A. Rivera, a member of the Popular Democratic Party (PDP). Acosta held the position of Personnel Director until May 27, 1986, when Hernández dismissed her.

9. The minimum qualifications for Personnel Director are the following: (a) a

Bachelor's Degree from an accredited college or university, preferably in Business Administration, with a major in management; (b) four years' experience in personnel administration with two of those four years in supervisory functions.

10. The minimum qualifications for the position of Assistant Executive Director of Administration are the following: (a) a Bachelor's Degree in Business Administration with a major in management from an accredited college or university; (b) 5 years experience directing personnel and real estate works.

11. After due notice, a pretermination hearing as to Acosta's qualifications for the position of Personnel Director was held on January 17, 1986, before William Cancel Burgos, a staff attorney with the Land Administration appointed as a hearing examiner. A further hearing was held on February 11, 1986. Counsel for Acosta represented her at both hearings. Acosta presented evidence as to her qualifications, including an expert witness, Francisco Cappas, who testified that Acosta was qualified to hold the trust position of Personnel Director on April 1, 1980, and that she also qualified to hold the career position of Personnel Director on July 15, 1983. On April 4, 1986, Cancel issued a Report and Recommendation, finding that Acosta was not qualified for the position of Personnel Director in the career service. On May 27, 1986, by letter, Hernández terminated plaintiff from employment as Personnel Director, effective the next day.

12. Cancel's political affiliation is "Popular Independentista," that is, a pro-independence member of the PDP.[1]

13. Both plaintiff and her counsel requested copies of the Report and Recommendation that led to her dismissal. These requests were denied by defendant.

## CONCLUSIONS OF LAW

### 1. *Preliminary Considerations*

The Court held an Initial Scheduling Conference (ISC) on November 25, 1986, at which counsel for the parties appeared. Under the Court's schedule established at the ISC by the agreement of the parties, defendant was to have filed its motion for summary judgment on the issue of qualified immunity during the week of January 5, 1987. Defendant did not file the motion until February 18, 1987. Because the defendant's late filing was in serious contravention of the ISC Order, and because the motion was filed on the eve of trial, the Court refused to entertain the motion. *See* Order, dated March 4, 1987; *see also* Pieras, Jr., *Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method,* 35 Cath.U.L.Rev. 943 (1986); Fed.R.Civ.P. 16. Defendant took an immediate interlocutory appeal of this decision requesting a stay of the trial until the motion for summary judgment was acted upon, and the First Circuit Court of Appeals denied the stay. *Edna Acosta Sepúlveda v. Pedro Hernández Purcell,* No. 87–1212, (1st Cir. March 13, 1987). Plaintiff never opposed the motion for summary judgment. The issue of qualified immunity will be decided herein.

### 2. *Demotion from Executive Assistant Director*

The defendant maintains that because this is a trust and confidence position, Hernández may dismiss Acosta for political reasons.

In actions brought under 42 U.S.C. § 1983, a defense of qualified immunity from liability for damages is available to state executive officers performing discretionary functions, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). On a motion for summary judgment, it is appropriate for a trial court to determine whether the law was clearly established at

---

1. "Independentista" refers to the movement that desires Puerto Rico become a nation unaffiliated with the United States of America.

the time of the conduct at issue. *De Abadia v. Izquierdo Mora,* 792 F.2d 1187 (1st Cir.1986). At the time of Acosta's demotion, the law was clearly established that public employees are protected by the First Amendment guarantees of freedom of speech and association from being discharged or demoted solely because of political affiliation, unless political affiliation is an appropriate requirement for the effective performance of the office involved. *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 367–68, 96 S.Ct. 2673, 2686–87, 49 L.Ed.2d 547 (1976). In *Branti* and *Elrod,* the Supreme Court recognized that in certain positions of government employment, where an employee's private political beliefs would interfere with the performance of her public duties, her first amendment rights could be required to yield to the state's vital interest in maintaining governmental effectiveness and efficiency. *Branti,* 445 U.S. at 517, 100 S.Ct. at 1294; *Elrod,* 427 U.S. at 366, 96 S.Ct. at 2686. The issue we must decide is whether. under an objective analysis, Hernández was reasonable in believing party affiliation was an appropriate requirement for Acosta's position. *De Abadia,* 792 F.2d at 1191.

■ Under the *Branti–Elrod* analysis, the threshold inquiry is to determine whether the position at issue relates to partisan political interests or concerns. *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 242 (1st Cir.1986) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987); *see also Collazo Rivera v. Torres Gaztambide,* 812 F.2d 258, 260 (1st Cir.1987). If that issue is satisfied, then we must determine whether the inherent responsibilities of the position are such that party affiliation is an appropriate requirement for the job. *Jiménez Fuentes,* 807 F.2d at 243; *Collazo Rivera,* 812 F.2d at 261.

The First Circuit has further expanded the threshold inquiry by addressing whether the agency involved "handled matters potentially subject to political differences and to focus upon how the plaintiff's posi-

tion influenced the resolution of such matters." *Mendez–Palou v. Rohena Betancourt,* 813 F.2d 1255, 1258 (1st Cir.1987). This inquiry is designed to eliminate from further consideration those positions involving "strictly technical or professional" functions. *Mendez Palou,* 813 F.2d at 1258.

■ The purpose of the Land Administration is to promote the general welfare, economic freedom, and social justice of this island through the efficient utilization of our land. It is empowered to purchase, sell, lease and assign Commonwealth land in order to preserve the natural value of the land, beaches, forests, and landscapes. It is authorized to act jointly with different Commonwealth agencies, the federal government, and private entities in projects designed to foster the efficient use of the land for recreational, historical, and commercial purposes. 23 L.P.R.A. §§ 311 *et seq.; see also* Statement of Motives, Law 13, May 16, 1962.

The description of the duties of the Assistant Executive Director, taken from the "Plan of Classification of Trust Positions in the Land Administration," outlines the nature of her work. The Assistant Executive Director works directly under the Executive Director of the Land Administration, and has a "high degree of personal judgment" in administering policies and procedures of the agency. She is responsible for coordinating, managing, and supervising personnel and the purchase of land. The position requires supervisory, communicative, and analytical abilities. *See* General Description of Duties, defendant's Exhibit III. Because of the close working relationship, with direct reporting to and counseling of the Executive Director, and the nature of the work involved, we think that this position is similar to the Deputy Executive Director for the Puerto Rico Sewer and Aqueduct Authority (PRASA), and that the "occupant of the position could potentially deal with matters of partisan interest or concern on a regular basis." *Méndez–Palou v. Rohena–Betancourt,* 813 F.2d 1255, 1262 (1st Cir.1987). We conclude that this position is among those not pro-

tected from patronage dismissal under the *Branti–Elrod* exception. Accordingly, Pedro Hernández Purcell is entitled to immunity from civil damages as a matter of law. Further, and on the merits, the claim under the first amendment resulting from her demotion is therefore DISMISSED.

### 3. *Due Process Claim: Demotion from Assistant Executive Director*

■ The defendant argues that plaintiff did not hold a property interest to continued employment. The due process clause of the fourteenth amendment guarantees public employees with a property interest in continued employment the right to an informal hearing prior to being discharged. *Brock v. Roadway Express*, 481 U.S. ——, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed. 2d 494 (1985). A property interest is created by "existing rules or understandings that stem from an independent source such as state law." *Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491.

The local law governing the issue of the property right is the Puerto Rico Public Personnel Law, ("Act") 3 L.P.R.A. § 1301, *et seq.* The Act divides government employees into two categories, career employees and trust or confidential employees. 3 L.P.R.A. § 1349. Confidential employees are "those who intervene or collaborate substantially in the formulation of public policy, who advise directly or render direct services to the head of the agency." 3 L.P.R.A. § 1350. In contrast, career employees may only be dismissed for "good cause, after preferment of charges in writing." 3 L.P.R.A. § 1336(4) (Supp.1986). Confidential employees are "of free selection and removal." 3 L.P.R.A. § 1351 (1978).

■ Under the "Plan of Classification of Trust Positions in the Land Administration," executed pursuant to the Public Personnel Act, the Assistant Executive Director is classified as a trust and confidence position. Under the Personnel Act, a trust employee does not possess a property interest to continued employment, and

therefore, is not entitled to due process protections prior to discharge. *Laureano–Agosto v. García Caraballo*, 731 F.2d 101, 103 (1st Cir.1984). Accordingly, because she has no right to a hearing prior to her demotion, defendant is entitled to both qualified immunity from damages and a dismissal of the claim for violation of the fourteenth amendment.

### 4. *Due Process Claim: Dismissal from Personnel Director*

Acosta was demoted from Executive Assistant Director on June 16, 1985, and was reinstated to Personnel Director, a career position. On November 25, 1985, the defendant sent her a letter stating that an analysis of her personnel file revealed that she was illegally recruited for the trust position of Director of Personnel, in that she did not possess the minimum preparation requirements for that position. She was given the right to request a hearing to show cause why her dismissal should not proceed. She exercised that right, and two hearings on her behalf were held on January 17, 1986, and February 11, 1986, before hearing examiner William Cancel Burgos, who had been appointed by defendant.

At the first hearing, Ramón Rivera González testified on behalf of the government concerning normal personnel procedures. The hearing examiner granted plaintiff's request to present an expert witness, and the hearing was continued. On February 11, 1986, the second hearing commenced, and the examiner received the testimony of Francisco Antonio Cappas. The government did not offer an expert witness, and rested on the evidence presented. Acosta did not testify at either hearing.

The hearing examiner considered whether Acosta possessed the minimum qualifications for the career position of Personnel Manager, as of July 15, 1983, that is, whether she had four years' experience in personnel administration before that date. The examiner recognized that she performed the position in the trust service for three years and three-and-one-half-months, from April 1, 1980, to July 15, 1983. In deciding the issue, the examiner considered

whether the duties she performed at the Department of Social Services, as Administration Technician, from July 1, 1978, until August, 1979, were related to personnel and could be credited towards the four-year requirement. The hearing examiner rejected this proposition, reasoning that the position did not involve technical administrative matters. The hearing examiner did not even mention Acosta's work with Gas Products, although evidence of the dates and duties of her employment were contained in her personnel file. Had the hearing examiner included evaluation of Acosta's work at Gas Products, in order to find Acosta unqualified, Cancel would have had to divine Acosta's management of an employment medical benefit plan as unrelated to personnel administration. Instead, Cancel merely ignored it. Cancel reached the conclusion Acosta did not have the necessary qualifications, her appointment was null and void ab initio, and recommended the Executive Director proceed to dismiss her. The April 4, 1986, report was referred to the Executive Director, but was not sent to plaintiff.

Based on this report, the defendant sent a May 27, 1986, letter to plaintiff, firing plaintiff the following day. He also informed plaintiff of her right to an appeal before the Appeals Board of the Personnel Administration System within 30 days from the notice of the firing. Acosta did not take an appeal.

■ Although state law provides a basis for a property interest in continued government employment, it is not the totality of "existing rules and understandings" from which a property interest in continued governmental employment may arise. *Loudermill* recognizes that an expectation of continued employment may arise from promises and understandings given to an employee, or from the manner in which an employer deals with a particular employee. *Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491.

■ In this case, Acosta developed a reasonable expectation of continued employment through the following actions taken by her employer. In early 1983, after having held the position of Personnel Director for almost three years, Acosta received a certification from the Central Office of Personnel Administration (OCAP) that she was qualified to hold the position she already occupied as it was being reconstituted in the career service. The directorship had been in the trust and confidence wing of the civil service when Acosta was first appointed. When the office was reformed, the Personnel Director's post was re-evaluated and certain qualifications laid out. Before her official designation as a career employee and Personnel Director, Acosta was certified to have met the minimum qualifications for the position. Without more, Acosta was reappointed to the career position she had held since 1980. Six months later, Acosta was promoted to a higher-level position. After her removal from that second, higher, post, Acosta was returned to her work as Personnel Director. She filled that role for another eleven months before her termination.

Acosta was promoted with the understanding that she had a continuing property right to the same or an equivalent position in the Land Administration. That understanding is codified in the personnel law of Puerto Rico.[2] She was returned to the same career position she had been promoted from upon leaving the Assistant Executive Director's post. Acosta's expectation of continued employment was thereby reinforced by the regularity of her employer's actions. At every step of the process, Acosta was treated as an ordinary member of the civil service, and nothing seemed amiss. It was not until late 1985, well after she first entered work as the Personnel Director, that irregularities in her appointment were charged.

Much water had passed under the bridge by this time. Acosta had achieved the entitlement of continued public employment by the continuing reassuring and reinforc-

---

2. "Every regular employee in a career position who is appointed to a confidential position shall be entitled to a position equal or similar to the last one he held in the career service." 3 L.P.R. A. § 1350.

ing actions of her superiors concerning her own personnel matters. Where the Land Administration accepted plaintiff as minimally qualified for the tenured position of Personnel Director after her holding the post for three years as a trust employee, promoted her to a higher-level position, and returned her to the directorship according to statutory entitlement, defendant is estopped from arguing that plaintiff had no property interest in continued government employment based on purported initial lack of qualification.

There being a property interest in continued employment, basic notions of procedural due process necessitate notice and a fair hearing by an impartial decisionmaker before deprivation of that property interest. *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 535, 542–43, 105 S.Ct. 1487, 1493–94, 84 L.Ed.2d 494 (1985). Acosta's claim for deprivation of procedural due process rights centers on attacking the impartiality of the decisionmaker. Reviewing the facts as evaluated by the hearing examiner, bias is the only explanation.

■ This Court has found that the hearing examiner chosen by defendant was of the same political persuasion as defendant. That hearing examiner found that after having served as Personnel Director since 1980, Acosta was appointed to the same position in the career service in 1983. She was promoted from that position and returned to it eighteen months later. Then, after almost another year as Personnel Director, Acosta was found to have been unqualified at the start. All of this work, both at the Personnel Director's level and at the Assistant Executive Director's post was summarily disposed of when the hearing examiner recommended her firing. To reach this result, the hearing examiner also took and unfounded and myopic view of Acosta's experience before her 1980 appointment to the directorship. All of this occurred at a time when Acosta was improving herself through continuing and professional education. In the face of this concatenation of facts, Acosta's claim of bias on the part of the hearing examiner is not only fully supported but obvious from the record. Only a biased examiner could reach the capricious conclusion that Acosta had no right to her position because of lack of qualification. The finding of the hearing examiner that Acosta lacked minimum qualifications was a subterfuge for the political animus that put her out of work.

Although the defendant may have arranged to go through the motions of a pretermination hearing, the findings of the hearing examiner are so glaring that they plainly reveal bias. Acosta's experience with both the Social Services Department and in the private sector paralleled her work as Personnel Director. Her experience as Administration Technician with the Social Services Department and as an Accountant with the Gas Products Corporation are appropriately considered personnel administration, and she surely had the requisite total of four years' experience in Personnel Administration. With Gas Products, Acosta handled and coordinated employee claims and benefits under that company's Group Medical Plan. In the Department of Social Services, she similarly coordinated the Social Security contributions and benefits for employees of that agency. Derogation of this experience is unfounded in fact and represents arbitrariness on the part of the hearing examiner. The hearing examiner merely hacked out whole episodes of her work history, until Acosta appeared to be approximately eight months short of the minimum qualifications. The decision of the hearing examiner is transparent and the hearing was therefore a sham.

When Acosta was reappointed to the position of Personnel Director from her post of Assistant Executive Director, her qualifications to hold that former job had increased. She had worked closely with the highest levels of the agency and had responsibility for not merely maintaining records and evaluating personnel, but also coordinating personnel agency-wide. Added to this is is her continuing legal education, where Acosta would have been studying the entire panoply of rights and obligations of citizens, workers, and the government. In studying the law, Acosta was preparing herself for better service to

the public. This legal education garnered her further qualifications for the post of Personnel Director. This is no "batata política;" this is a civil servant concerned with her career and concerned with competent and efficient governmental services. *Cf. Ortiz v. Torres Gaztambide,* 673 F.Supp. 645 (D.P.R.1987) (patronage employment of unqualified party member in concocted position). The hearing examiner took no notice of any of these developments. Proceeding with blinders on surpasses merely arguable interpretation of evidence; ignoring these circumstances is unfounded in reason.

Buttressing the finding of bias on the part of the hearing examiner is the flat refusal of defendant to provide Acosta with a copy of the hearing examiner's Report and Recommendation. Although the hearing examiner explicitly noted Acosta's right to seek both administrative and judicial review of any adverse decision, Hernandez would not turn over a copy of the Report and Recommendation upon which Acosta's discharge was based. This refusal offends basic notions of fairness and again points up the bias that permeated Acosta's discharge and the hearing that attempted to justify it.

Although a pretermination hearing was held, no meaningful concepts of procedural due process were honored. Nor can the Court conclude that the defendant had an objectively reasonable belief that a hearing presided over by such a hearing examiner could possibly satisfy the procedural due process guarantee of the fourteenth amendment. A grant of qualified immunity in this case would be inappropriate. Acosta's right to be free from deprivation of property without due process of law was denied.

Acosta is entitled to recover compensatory damages for that deprivation. *Carey v. Piphus,* 435 U.S. 247, 263–4, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Fernández v. Chardón,* 681 F.2d 42, 60 (1st Cir.1982). This rancorous disregard of the fundamental liberties of this land caused deep humiliation and frustration to Acosta. The Court with its own eyes saw Acosta recount the bewilderment and consternation caused in her by defendant's actions. Acosta suffered and is entitled to $10,000.00 in compensatory damages on this claim. Further, this Court was amazed by the extraordinary misconduct by which defendant callously disregarded Acosta's basic rights. Punitive damages are available under section 1983 when the defendants' conduct is shown to have been motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade,* 461 U.S. 30, 52, 103 S.Ct. 1625, 1638, 75 L.Ed.2d 632 (1983). Punitive damages "are designed by the law to punish extraordinary misconduct." *Fishman v. Clancy,* 763 F.2d 485, 489 (1st Cir.1985). The extraordinary misconduct in this case is the egregious manner in which defendant first tried to deny Acosta's property interest and then attempted to justify it with a meaningless pirouette of a hearing. Acosta shall be awarded $10,000.00 in punitive damages.

### 5. First Amendment Claim: Dismissal from Personnel Director

Acosta's final claim is that she was discharged from the post of Personnel Director because of her political affiliation in violation of her first amendment rights to free speech and free association. Although Acosta's higher position as Assistant Executive Director had no protection from political dismissal because of the proximity in which she worked to policy formulation and implementation of politically sensitive matters, no such concerns enter the position of Personnel Director. Indeed, defendant has not argued at any point in the proceedings that political affiliation was an appropriate requirement to hold the position of Personnel Director for the Land Administration. Despite defendant's silence in this matter, the Court finds below that he is not entitled to qualified immunity as to damages on the first amendment claim for Acosta's dismissal.

Defendant rested on the defense that Acosta's initial appointment was void ab initio. Without being explicit, defendant

has raised the *Mt. Healthy* defense. Defendant, tacitly argues that, even in the absence of political considerations, plaintiff would have been dismissed because of her purported illegal hiring. *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1976). *Mt. Healthy* establishes a "but-for" causality chain in evaluating governmental discharges: if plaintiff would not have been fired but for her political affiliation, the *Mt. Healthy* defense fails; if plaintiff could have been fired for any legitimate reason, e.g., insubordination or malfeasance, the *Mt. Healthy* defense succeeds. Defendant's argument urges the Court to ignore whether Acosta's dismissal from the directorship of personnel at the Land Administration was politically motivated in favor of examining only Acosta's 1983 résumé.

■ In any event, the Court finds Acosta's testimony as to the political harassment and dictation from above of politically motivated personnel orders to be the true account of what Acosta underwent as Personnel Director. Moreover, the sensitivity of Acosta's position illuminates how inappropriate political affiliation is as a requirement for holding a position as a Personnel Director. Although, as analyzed in section 2, above, the Land Administration is an agency that may deal with issues of potentially partisan political interest, the position of Personnel Director is not a post that deals with these issues.

The personnel department of a public service agency is the central workshop of employment policy and practice. When the department conducts its business honestly and within the norms and regulations established by law, it produces an efficient workforce comprising employees of merit. The community, which is composed essentially of the citizens who pay taxes and deserve service of excellence, consequently receives the benefits of better public service. But the personnel department can also be the nerve center of a political patronage system. In a grotesque parody of the ideal system that is envisioned by lawmakers, the marionette at the head of a patronage department disregards all rules and regulations in employing the political hacks of the party in power. The result is not only a mockery of orderly government, but the oppressive imposition of a political machinery upon the constitutionally protected rights of citizens.

The government is not the property of the party in power. It belongs to the people and it is organized to do the people's bidding. In celebrating the Bicentennial of the United States Constitution, our eyes were repeatedly turned to an inspiring theme: "We the People". Our living constitution demands that patronage practices, which degrade our system of government, cease forthwith. The people of Puerto Rico are entitled to have the person in charge of employment conduct her practices in accordance with the rules and regulations established for the benefit of all. The people should be protected from the consequences of political personnel decisions that serve the selfish benefit of a few politicians who seek to elevate themselves in the eyes of the populace by dispensing favors and privileges. The people have a right to a government of laws and not of persons who may, at a particular time, sit in positions of power.

Accordingly, the Court finds that political affiliation is an inappropriate requirement for the position of Personnel Director of the Land Administration. The Court further finds that plaintiff has proved by a preponderance of the evidence that her discharge was politically motivated. The record clearly showed instances when Acosta was directed to make personnel decisions based on the applicants' politics. After Acosta could no longer respond to these edicts with sufficient alacrity, reasons were found to dispose of her.

As has been analyzed in section 4 above, the reasons given for her discharge cannot support the action. Just as defendant is estopped from arguing the purported illegality of her 1983 assumption of the Personnel Director's post she already held, it becomes clear that the purported illegality of her hiring was merely a trumped-up charge, having no legitimate nexus with

Acosta's performance or true qualifications. As such, and without defendant making the argument that political affiliation could be an appropriate requirement for Acosta's post, the Court finds that defendant's actions objectively evince a lack of an belief that Acosta could be fired for political reasons. Qualified immunity will not lie. As for defendant's other argument, he cannot ride a *Mt. Healthy* stalking horse over plaintiff in this case. The reasons given for the discharge were sham.

The violations of plaintiff's constitutionally protected rights under the first amendment are as grievous as those committed against her in violation of her fourteenth amendment rights. These injuries, however, are separate and must be compensated separately. Plaintiff is therefore awarded $10,000.00 in compensatory damages. Punitive damages lie as well in the amount of $10,000.00 for the defendant's blatant disregard for free speech and free association, and the insulting cynicism with which defendant attempted this purge of the Personnel Director.

The denial of Acosta's rightful job as Personnel Director of the Land Administration is an irreparable injury, not only to Acosta but to the citizens of Puerto Rico that rely on honest and effective government. A Court order of reinstatement would not be an undue disruption of the activities of the Land Administration. Acosta has worked as Personnel Director since 1980. She is not unqualified for the job. The public interest in this case, as noted before, would be served by a civil service free from the vagaries of politics. Reinstatement of the plaintiff would restore a directorship untainted by political selection. The Court shall enter judgment ordering, adjudging, and decreeing that defendants reinstate Acosta to the position of Personnel Director of the Land Administration with career civil service status, and that defendant cease and desist from this course of political discrimination.

As an integral part of this injunctive relief, the Court shall also order that defendant restore plaintiff's backpay. Acosta suffered a financial loss of $1,749.00 monthly since her dismissal in May 1986. The Court shall enter Judgment directing the payment of $31,482.00 in backpay from June 1986 to the end of December 1987, as a integral part of the injunctive relief. The Court shall further enter judgment directing defendant to continue the payment of this backpay amount, at the monthly rate of $1,749.00, until Acosta's actual reinstatement with full pay and benefits.

Judgment shall be entered accordingly.

IT IS SO ORDERED.