**Edna ACOSTA–SEPULVEDA,**
**Plaintiff, Appellee,**

v.

**Pedro HERNANDEZ–PURCELL,**
**Defendant, Appellant.**

**No. 88–1775.**

United States Court of Appeals,
First Circuit.

Heard Feb. 28, 1989.

Decided Nov. 8, 1989.

Juan Rafael González–Muñoz, Federal Litigation Div., Dept. of Justice, Hato Rey, P.R., with whom Norma Cotti Cruz, Deputy Sol. Gen., Vanessa Ramírez, Asst. Sol. Gen., and Rebecca F. Rojas, Federal Litigation Div., Dept. of Justice, were on brief, for appellant.

José Ramón Pérez–Hernández, San Juan, was on brief, for appellee.

Before BREYER, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Defendant appeals the judgment of the district court which held that plaintiff Edna Acosta Sepúlveda ("Acosta") was dismissed as Director of Personnel of the Land Administration of the Commonwealth of Puerto Rico in violation of her due process and First Amendment rights. *Acosta Sepúlveda v. Hernández Purcell,* 679 F.Supp. 151 (D.C.P.R.1988). We proceed to reverse the court's finding of due process violations and affirm on the First Amendment claim.

## FACTUAL BACKGROUND

Acosta, an acknowledged member of the New Progressive Party ("NPP"), began work on April 1980 as Personnel Director of the Land Administration of the Commonwealth of Puerto Rico. At the time of her appointment the position of Personnel Director was classified as a trust position. On June 5, 1983, the position was reclassified as a career position.[1] On December 1983, she was promoted to the post of Assistant Executive Director of Management in the same agency.

On June 15, 1985, the defendant Pedro Hernández Purcell ("Hernández"), the Executive Director of the Land Administration and a member of the opposing Popular Democratic Party ("PDP") demoted Acosta to the position she previously occupied: Personnel Director. She was replaced by a member of the PDP.

After this demotion, she realized that her permanence in the agency was in jeopardy. She was notified that she did not have the qualifications for the position of Personnel Director. Two pretermination hearings

---

[1] There are two types of positions in public employment in Puerto Rico: trust and career. 3 L.P.R.A. § 1349 (Supp.1989). Whereas an employee who holds a trust position normally can be readily removed, 3 L.P.R.A. § 1350 (1978), a career employee can be discharged only for "good cause." 3 L.P.R.A. § 1336(4) (Supp.1987).

were held as to plaintiff's qualifications for that position before William Cancel Burgos, a staff attorney with the Land Administration since 1976.

The issue to be determined at the hearing was whether plaintiff met one of the minimum qualifications for the position, namely that the Personnel Director was required to have four years experience in personnel administration. There was no controversy between the parties that when the position was reclassified from trust to career, plaintiff had performed as Personnel Director for three years and three months. The question was whether previous experience at the Department of Social Services and at a private concern was qualifying experience.

After the hearing, the staff attorney, in his Report and Recommendations, determined that the experience at the private concern did not have any relation to personnel administration and that plaintiff's experience at the Department of Social Services, although related to the area in question, was not qualifying. He thus concluded that because she had only three years and three months experience in personnel administration, she did not qualify for the position and had to be terminated. Subsequently, Hernández dismissed Acosta.

Upon termination, Acosta filed the present section 1983 action. After a bench trial, the court held for plaintiff. First, as to Acosta's demotion, the court determined that the position of Executive Assistant Director, from which she was demoted, was not protected from patronage dismissal under *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Thus, it dismissed plaintiff's claims based on the demotion.

Second, as to Acosta's termination from the position of Personnel Director, it held that a hearing had to be conducted before an "impartial decisionmaker" and that the hearing held before the staff attorney was a "sham" or a "subterfuge," *Acosta Sepúlveda*, 679 F.Supp. at 158, because Cancel was biased against plaintiff. The court then awarded plaintiff $10,000 in compensatory and $10,000 in punitive damages against defendant. It held defendant liable because he did not have "an objectively reasonable belief that a hearing presided over by such a hearing examiner could possibly satisfy the procedural due process guarantee of the fourteenth amendment."

Third, the court determined that plaintiff had shown that her discharge was politically motivated and that defendant was not entitled to qualified immunity on this claim. The court awarded $10,000 in compensatory and $10,000 in punitive damages, separate and apart from the awards made in connection with the due process violation. Finally, the court ordered reinstatement and the award of backpay.

On appeal, Hernández challenges the court's findings of due process violation and political discrimination. He also maintains that the evidence before the district court was not sufficient to support an award of punitive damages.

## PROCEDURAL DUE PROCESS

Before properly addressing defendant's legal argument on the due process claim, we need to review the court's factual determination on this matter.

Defendant asserts that the district court's conclusion that the hearing before the staff attorney was a "sham" or a "subterfuge" is clearly erroneous and should be overturned. We agree. Appellate courts will not disturb the trial court's findings unless clearly erroneous. Fed.R.Civ.P. 52(a). However, a finding of fact will be set aside when the appellate court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Scarpa v. Murphy*, 806 F.2d 326, 328 (1st Cir.1986). After reviewing the record we find that the hearing was not a "sham" or a "subterfuge." The district court's finding was clearly erroneous.

■ The district court's determination that the hearing was a "sham" or a "subterfuge" was based on evidence about the

staff attorney's political affiliation and the Report and Recommendation he issued. As to the staff attorney's political affiliation, it is clear that the court had striken it from the record. Accordingly, there was no evidence on the record to support the court's finding that the staff attorney was a member of the Popular Democratic Party. Thus we are left only with the staff attorney's Report and Recommendations. Although reasonable persons may disagree with its conclusion that Acosta's previous work was not qualifying experience, the Report and Recommendations is not of such an arbitrary and capricious nature as to support an inference that the staff attorney was biased against Acosta or that the decision was somehow preordained.

We are now in a position to address Hernández' legal argument on Acosta's due process claim. He does not contest that Acosta did have a property interest in the position of Personnel Director. He cannot. As a career employee, Acosta could have been removed only for "good cause, after preferment of charges in writing." 3 L.P.R.A. § 1336(4) (Supp.1987). Once it is determined that Acosta had a protected property interest, the relevant inquiry is whether the procedure employed to deprive Acosta of her job complied with the requirements of due process. *See Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985).

■ Before a "tenured public employee" is discharged, she is "entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Cleveland Bd. of Education v. Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. This procedure complies with the essential requirements of due process: notice and an opportunity to respond. *Id.* Contrary to the district court's premise, it is not required that a hearing be conducted before an "impartial decisionmaker." 679 F.Supp. at 158. In fact, the hearing may be presided over by the employer himself.

*Feliciano–Angulo v. Rivera Cruz,* 858 F.2d 40, 44 (1st Cir.1988).

The findings of fact of the district court, when viewed in light of the applicable law, clearly reveal that there was no due process violation. Defendant notified Acosta of his decision and his reasons for discharging her. Pretermination hearings were held before a staff attorney with the Land Administration. Acosta presented evidence as to her qualifications, including an expert witness. A few weeks after the hearings the staff attorney issued the nineteen page Report and Recommendations concluding that Acosta did not qualify for the position of Personnel Director. Subsequently, defendant terminated Acosta. It is not our task to review the correctness of the staff attorney's decision. The alleged procedural fault cannot be the examiner's failure to reach the right result. Such a holding would turn any procedural due process claim into a full judicial review of discretionary administrative decisions.[2] In this light, we must conclude that defendant fully complied with the requirements of due process. Therefore, the judgment on the due process claim must be reversed.

## FIRST AMENDMENT

Defendant does not argue that political affiliation is an appropriate requirement for the effective performance of the position of Personnel Director. *Branti v. Finkel,* 445 U.S. at 518, 100 S.Ct. at 1294. Instead his contention is that the district court's finding that he acted out of political bias against Acosta is erroneous. The motivating factor for the dismissal, defendant maintains, was Acosta's lack of qualifications for the Personnel Director position.

■ In *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Court delineated the procedural norms applicable to cases where the defendant alleges that the true motive for the dismissal of a public employee was other than political. Initially, the burden is on the plaintiff to show that political discrimination was a "sub-

2. Of course, an arbitrary and capricious decision by the hearing examiner, when considered in conjunction with other evidence can be sufficient in a proper case to support a finding that

the hearing was pretextual. And, an aggrieved employee may have state law remedies available to combat a wrong decision.

stantial factor" or a "motivating factor" for the defendant's action. *Id.* at 287, 97 S.Ct. at 576. Plaintiff having carried that burden, the defendant can show, "by a preponderance of the evidence, that [he] would have reached the same decision ... even in the absence of the protected conduct." *Id.* The rationale for this burden shifting rule is explained succinctly in *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). If a public employee is entitled to reinstatement whenever protected conduct plays a "substantial" part, she would be "in a better position as a result of the exercise of constitutionally protected conduct than [she] would have occupied had he done nothing." *Id.* at 416, 99 S.Ct. at 697. Thus, after defendant has introduced evidence sustaining his *Mt. Healthy* defense, plaintiff still will prevail if it is found that she would not have been fired *but for* her political affiliation. *Id.* at 417, 99 S.Ct. at 697; *Cordero v. De Jesús Méndez*, 867 F.2d 1, 5 (1st Cir.1989); *Elwood v. Pina*, 815 F.2d 173, 176 (1st Cir.1987). Lastly, because the two-pronged *Mt. Healthy* test involves questions of fact, the district court findings on this point are subject to reversal only if clearly erroneous. *Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1, 3 (1st Cir.1987); *see Melton v. Oklahoma City*, 879 F.2d 706, 713 (10th Cir.1989).

■ In the instant case, there can be no question that plaintiff met her initial burden under *Mt. Healthy*. The district court's finding that Acosta's decision to terminate was politically motivated has ample support in the record and does not merit further discussion.

Defendant's *Mt. Healthy* defense is that he dismissed Acosta only after an independent hearing examiner, the staff attorney, had determined that she was not qualified for the position she was occupying. Therefore, he argues that he sustained his burden under the second part of the *Mt. Healthy* test. Defendant puts the cart before the horse. The establishment of the procedural safeguards in this case cannot purge defendant's political animus. Defendant has not proven, by a preponderance of the evidence, that his *initial* decision to dismiss Acosta was not politically motivat-

ed. Thus, defendant has not established that although Acosta technically was not qualified, she would have been fired absent defendant's initial discriminatory action. *See Woodward v. United States*, 871 F.2d 1068, 1073 (Fed.Cir.1989).

PUNITIVE DAMAGES

■ Defendant also challenges the separate award of punitive damages. There being no due process violation we address only the award of punitive damages with regard to the First Amendment claim. Punitive damages can be assessed against a defendant in a § 1983 action when his conduct "involves reckless or callous indifference to the federally protected rights" of plaintiff. *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); *Rowlett v. Anheuser–Busch, Inc.*, 832 F.2d 194, 205 (1st Cir.1987). In assessing $10,000 in punitive damages against defendant on the First Amendment claim, the district court specifically found that defendant's conduct constituted a blatant disregard for the free speech and free association rights of Acosta. *Acosta Sepúlveda*, 679 F.Supp. at 161. This finding is sufficient under *Wade* to sustain the award of punitive damages in the First Amendment claim.

*Affirmed* in part, *reversed* in part. No costs.