# United States Court of Appeals
## For the First Circuit

No. 21-1251

DIANE LAWLESS,

Plaintiff, Appellee,

v.

TOWN OF FREETOWN, et al.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Kayatta and Howard, Circuit Judges,
and Walker, District Judge.*

Joseph A. Padolsky, with whom Louison, Costello, Condon & Pfaff, LLP was on brief, for appellants.
Chip Muller, with whom Muller Law, LLC was on brief, for appellee.

March 22, 2023

* Of the District of Maine, sitting by designation.

**WALKER**, <u>District Judge</u>.  The Appellants, three members of the Town of Freetown Board of Selectmen, ask us to review a summary judgment order that rejected their affirmative defense of qualified immunity against Appellee Diane Lawless's procedural due process claim.  For reasons that follow, we reverse in part the district court's summary judgment ruling and remand for further proceedings.

## I.

Plaintiff-Appellee Diane Lawless served as Treasurer of the Town of Freetown for roughly two years beginning in 2013 and ending in 2015.  Her contract called for a three-year term of employment, terminable only for cause following a six-month probationary period.  The Town of Freetown is governed by a Board of Selectmen. The board members took exception to Lawless's continued tenure, arranged for her to receive notice of perceived shortcomings, placed her on administrative leave, and eventually instituted disciplinary proceedings based on a notice reciting eight charges. At her termination hearing before the Board, Lawless was represented by counsel, questioned the Board's two witnesses, and addressed the Board on her own behalf.  At the conclusion of the three-day hearing, the Board voted to terminate Lawless's contract without deliberation.  In connection with the underlying controversy concerning Lawless's performance and in the lead up to the hearing, certain statements were made by the board members

that would permit findings of personal bias or prejudgment. The Town of Freetown affords no further proceeding post-termination.

Lawless filed an action in Bristol County Superior Court naming as defendants the Town of Freetown and (now former) board members Lee Baumgartner, Lisa Pacheco, and Paul Sadeck. The individual board members are the Appellants herein.[1] Lawless included in her complaint a claim alleging deprivation of her right to procedural due process, citing 42 U.S.C. § 1983, and on that basis the defendants removed Lawless's state court action to the United States District Court for the District of Massachusetts. In due course, Lawless amended her complaint and the Town and the board members filed a joint answer to the amended complaint. The answer recited nine affirmative defenses but omitted any reference to the doctrine of qualified immunity or immunity in general.

Following the close of discovery, the board members joined with the Town in seeking summary judgment against Lawless's due process claim, contending for their part that the doctrine of qualified immunity shielded them from Lawless's § 1983 claim. Lawless opposed the motion by arguing, in part, that the board members waived the defense of qualified immunity by failing to include it in their answer. The board members did not file a reply memorandum, leaving Lawless's waiver challenge unopposed. Nor did

---

[1] Lawless also named Freetown's replacement treasurer, Jessica Thomas, as a defendant in her action. Ms. Thomas is not one of the Appellants in this appeal.

they file a motion to amend their answer to add the qualified immunity defense.

The district court called the summary judgment motion for oral argument on February 26, 2021. In the limited time available for argument, the parties argued only their respective positions on the merits of Lawless's state law libel claim and her due process claim; they did not address either the board members' qualified immunity defense or Lawless's waiver contention.

The district court issued its summary judgment ruling in a memorandum and order dated March 9, 2021. Lawless v. Town of Freetown by & through Thomas, No. 18-cv-11089-IT, 2021 WL 878083 (D. Mass. Mar. 9, 2021). In its ruling, the court opted to proceed directly to the merits of the qualified immunity defense, neither relying on nor even mentioning the waiver argument. Based on its discussion of the merits of the procedural due process claim, which it found supported on the summary judgment record, the court quickly rejected the board members' argument for qualified immunity, concluding that it is clearly established that a "sham" disciplinary hearing does not satisfy due process.

The board members ("Appellants") filed a timely notice of appeal in which they argued that the district court erred in its denial of their qualified immunity defense.

- 4 -

This Court has jurisdiction over the Appellants' interlocutory appeal of the district court's "denial of summary judgment on qualified immunity only insofar as the appeal rests on legal, rather than factual grounds." McCue v. City of Bangor, 838 F.3d 55, 57 (1st Cir. 2016) (cleaned up). Here, the district court concluded that the facts viewed in the light most favorable to Diane Lawless would permit a jury to find that the Appellants violated clearly established constitutional law. That legal determination is subject to appellate review. Id.

## A.

Because Lawless's waiver argument logically precedes analysis of the merits, we pause to consider it before turning to the district court's qualified immunity ruling. The Appellants did not assert in their answer the affirmative defense of qualified immunity. Lawless argued in her summary judgment opposition that the failure to timely plead the defense amounted to waiver. The Appellants did not file a reply to that challenge. Nor did they seek leave to amend their answer.

As an affirmative defense, qualified immunity can be waived or, more precisely here, forfeited.[2] Guzmán-Rivera v. Rivera-

---

[2] "Although jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." Kontrick v. Ryan, 540 U.S. 443, 458 n.13 (2004) (cleaned up).

Cruz, 98 F.3d 664, 667 (1st Cir. 1996); Buenrostro v. Collazo, 973 F.2d 39, 44 (1st Cir. 1992). Rule 8 of the Federal Rules of Civil Procedure provides: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). This Court has warned practitioners "that affirmative defenses not included in an appropriate responsive pleading are waived," Carrasquillo-Serrano v. Mun. of Canovanas, 991 F.3d 32, 42-43 (1st Cir. 2021), and has reversed district courts for failing to observe this maxim, see, e.g., Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1226 (1st Cir. 1994). Ordinarily, as explained in Knapp Shoes, "affirmative defenses under Rule 8(c) must be pled in the answer . . . to give the opposing party notice of the defense and a chance to develop evidence and offer arguments to controvert the defense." Id.

Despite this otherwise stern admonition, in Knapp Shoes this Court reserved the issue of whether a district court may excuse a failure to plead "if 'a plaintiff receives notice of an affirmative defense by some means other than pleadings' and is not prejudiced by the omission of the defense from the initial pleading." Id. (quoting Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1445 (6th Cir. 1993)).[3] Since Knapp Shoes, this Court has articulated

---

[3] Another exception applies when the merits of an affirmative defense have been "fully tried under the express or implied consent of the parties, as if it had been raised in the original responsive pleading." Fed. Deposit Ins. Corp. v. Ramirez-Rivera, 869 F.2d 624, 626-27 (1st Cir. 1989).

the standard to allow a district court to excuse a failure to timely plead where (1) "the defendant asserts [the affirmative defense] without undue delay and the plaintiff is not unfairly prejudiced by any delay," or (2) "the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed." Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir. 2003).

If there is an exception to Rule 8(c)'s pleading requirement in this case, it necessarily falls under the first category, which calls for consideration of delay and its more significant counterpart, resulting prejudice. In short, the party seeking to assert the defense should explain why and the district court should consider whether the totality of the relevant circumstances (e.g., the nature of the case, case pleadings, discovery initiatives, correspondence, and statements made in open court) supports "a practical, commonsense" conclusion that "Rule 8(c)'s core purpose--to act as a safeguard against surprise and unfair prejudice--has been vindicated." Williams v. Ashland Eng'g Co., Inc., 45 F.3d 588, 593 (1st Cir. 1995), abrogated on other grounds by Carpenters Local Union No. 26 v. U.S. Fidelity & Guar. Co., 215 F.3d 136 (1st Cir. 2000).

Given the Appellants' delay in raising the defense of qualified immunity and their failure to defend that delay[4], the district court in its discretion could have deemed the defense forfeited for purposes of summary judgment. The district court, however, opted not to rely on any waiver or forfeiture. On appeal, Lawless fails to argue either that the district court abused its discretion in so proceeding or that that she was prejudiced by any delay in raising the defense. Accordingly, like the district court, we proceed to the merits.

**B.**

We review a district court's denial of summary judgment on qualified immunity grounds de novo. Estate of Rahim by Rahim v. Doe, 51 F.4th 402, 410 (1st Cir. 2022). However, we credit the district court's factual assessment that the record, viewed in the light most favorable to Lawless, the nonmoving party, would support the finding that the Appellants were seriously biased against her continued employment by the Town. See Valdizán v. Rivera-Hernandez, 445 F.3d 63, 65 (1st Cir. 2006). Nonetheless, "we

---

[4] Citing Guzmán-Rivera v. Rivera-Cruz, 98 F.3d 664 (1st Cir. 1996), Appellants argue that a state actor is always free to raise the qualified immunity defense "in a post-discovery summary judgment motion even if it was not raised as an affirmative defense in the answer." Reply Br. 1. However, the defendants in Guzmán-Rivera had asserted the qualified immunity defense in their answer, unlike the Appellants. Id. at 669. Thus, contrary to Appellants' argument, Guzmán-Rivera is not a license for defendants to raise initially and exclusively by summary judgment motion a qualified immunity defense.

remain free to examine, on an interlocutory appeal, whether [a] fact makes any cognizable legal difference." Id.

Diane Lawless contends that the appellants violated her right to due process of law because they harbored biases against her yet still presided at the only due process hearing afforded to her by the Town of Freetown. For their part, the Appellants argue they are entitled to qualified immunity because they provided Lawless a fulsome, three-day, pretermination process replete with notice of the charges and possible consequences, the opportunity to cross-examine and call witnesses, and the opportunity to respond and advocate for herself, both in her own words and through the closing argument of counsel. They argue that they are shielded by qualified immunity because no reasonable board member would appreciate that this kind of process was deficient, even if the decisionmakers arrive at the hearing predisposed to terminate the employee.

The district court rejected the idea that biased decision makers might provide adequate pretermination procedural due process based on its determination that the facts viewed in the light most favorable to Lawless would permit a jury finding "that the Board had made up its mind to terminate Lawless prior to the hearing and that no evidence she presented would have changed the result." Mem. & Order at 20. Among other facts shedding light on this ruling, the district court noted several disparaging comments

that the Appellants made prehearing, one board member's remark that the due process proceeding was a "dog and pony show" standing in the way of Lawless's prompt termination, and the Appellants' failure to deliberate before voting to terminate Lawless's contract. In the district court's estimation, such findings would support a verdict that Lawless had not received a "true" opportunity to respond, id., in violation of clearly established law. For the reasons that follow, we conclude that the district court erred in its assessment of the Appellants' qualified immunity defense.

When government officials are sued in their individual capacities for money damages, the doctrine of qualified immunity shields them from pecuniary liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). To assess an official's bid for qualified immunity, we may begin by determining whether the conduct in question violated a federal statutory or constitutional right. Alternatively, we may begin by determining whether the unlawfulness of the conduct was clearly established at the time. Punsky v. City of Portland, 54 F.4th 62, 65-66 (1st Cir. 2022). The latter inquiry has "two related aspects," Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 9 (1st Cir. 2013), namely: (1) the relative clarity of the governing law to a reasonable official

on the date of the alleged wrong and (2) whether the specific characteristics of the situation confronted by the official would have made it clear to a reasonable official how the governing law applied in the given situation. Punsky, 54 F.4th at 66. Together, these aspects of the inquiry must persuade us that available precedent placed the legal question beyond debate such that any reasonable official would have appreciated the illegality of the conduct in question. City & Cnty. of San Francisco v. Sheehan, 575 U.S. 600, 611 (2015). We take up the latter aspect of the qualified immunity analysis because it affords the most direct route to consideration of the clarity of the governing law and resolution of the appeal.

To begin, the parties do not dispute that Lawless was entitled under Massachusetts law to due process in connection with the for-cause termination of her employment contract with the Town of Freetown. Given this premise, it was clearly established that the essential components of a pretermination due process hearing were "oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). It was also clearly established that "[t]o require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Id. Based on

- 11 -

our review of the summary judgment recitation of facts provided by Lawless and the district court, the pretermination hearing in this case met all the essential requirements of predeprivation process.

Lawless disagrees because she contends that personal bias plugged the Appellants' ears so that they did not actually hear her response. The district court based its ruling precisely on this notion. However, as far as the law is concerned, this notion was drawn a priori by Lawless's counsel and the district court; it was not clearly established in the law, at least not in this circuit and others.

Reasonable persons generally come to understand--instinctively as much as inductively--that the impartiality of decisionmakers is a basic precept of a fair process. This Court has announced as much, stating that "[a]n impartial decisionmaker is, of course, a fundamental component of due process." Beauchamp v. De Abadia, 779 F.2d 773, 776 (1st Cir. 1985) (citing Friendly, Some Kind of Hearing, 123 U. Pa. L. Rev. 1267, 1279 (1975)). Nowhere is this more clearly enshrined in the law than in the context of judicial and quasi-judicial proceedings. Schweiker v. McClure, 456 U.S. 188, 195 (1982) ("[D]ue process demands impartiality on the part of those who function in judicial or quasi-judicial capacities.").

Yet, even in judicial proceedings absolute impartiality is not a constitutional mandate.

> [V]arious situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.  Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him.

Withrow v. Larkin, 421 U.S. 35, 47 (1975) (footnotes omitted).

However, other than the "constitutionally [in]tolerable" situations identified by the Withrow Court, "most matters relating to judicial disqualification [do] not rise to a constitutional level."  FTC v. Cement Institute, 333 U.S. 683, 702 (1948). "[M]atters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion."  Tumey v. Ohio, 273 U.S. 510, 523 (1927); see also Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820 (1986). Stated otherwise, even when it comes to judicial officers, the constitutional threshold for disqualifying personal bias is not clearly established.

By comparison, the threshold for unconstitutional bias in pretermination government employment proceedings is about as clear as mud.  In fact, there is not even a basic requirement that hearing officers be impartial in the employment context. Chmielinski v. Massachusetts, 513 F.3d 309, 318 (1st Cir. 2008); Acosta-Sepulveda v. Hernandez-Purcell, 889 F.2d 9, 12 (1st Cir. 1989).  To the contrary, it is clearly established that employing authorities may preside at termination hearings even though they

instituted the termination proceedings.  Acosta-Sepulveda, 889
F.2d at 12 (listing Loudermill entitlements and observing that "it
is not required that a hearing be conducted before an 'impartial
decisionmaker'").  That kind of bias--essentially a predisposition
to terminate an employee's contract--is precisely the kind of bias
in play here.[5]

    While this Circuit has openly questioned whether "the issue
of bias can be addressed with an abstract broad statement that the
due process standard of Loudermill either always or never requires
that the hearing officer be unbiased," Chmielinski, 513 F.3d at
317, such "abstract broad statements"--were they offered--would
not serve as clearly established law for purposes of our qualified
immunity inquiry.  See Brosseau v. Haugen, 543 U.S. 194, 198 (2004)
("It is important to emphasize that this inquiry must be undertaken
in light of the specific context of the case, not as a broad
general proposition." (internal quotation marks omitted)).
Consequently, the Chmielinski panel's contemplation of a
decisionmaker "so utterly biased" that the Loudermill response
right can be deemed a hollow exercise, id. at 318, does not afford

_____

[5] In the context of municipal employment, this species of personal
bias is almost certain to be present to a greater or lesser degree.
Municipal decisionmakers routinely have a degree of supervisory
insight based on observations of workplace performance.  To hold
that such a bias precludes the town officials from approving a
termination even after the employee is given notice and a chance
to explain why termination is not called for would be to require
most small towns to surrender important responsibilities to
persons not accountable to local citizens.

- 14 -

such clear guidance that any reasonable official in the Appellants'
position would have been on notice that presiding at Lawless's
termination hearing would violate the due process clause.[6]

Given that the clear legal statements available in binding
precedent tend more to frustrate than support Lawless's due process
claim against the Appellants, we have little difficulty concluding
that the doctrine of qualified immunity shields the Appellants
from liability against Lawless's due process claim.  Before ending
our inquiry, we pause to transcribe a coda.

Lawless contends that her case is different because the Town
of Freetown provided only one hearing, a pretermination hearing.
In her understanding, Appellants should have known that a
postdeprivation hearing would be needed if the pretermination
hearing was infected with personal bias, because the availability

---

[6] Concerning the Appellants' personal liability, clearer guidance
is available in this circuit's precedent, and it does not favor
the imposition of liability on individual government decision
makers based on bias in a pretermination hearing.  Cronin v. Town
of Amesbury, 81 F.3d 257, 260 n.2 (1st Cir. 1996) ("[Cronin]
generally argues that the Town defendants were out to get him,
and, with respect to the termination specifically, he argues that
[the hearing officer] was biased and made evidentiary errors.");
see also id. at 260 ("Cronin cannot succeed on his procedural due
process claim unless he can show that the state failed to provide
him with an adequate postdeprivation remedy.").  Cf. Lowe v. Scott,
959 F.2d 323, 340-41 (1st Cir. 1992) ("[I]f a state provides
adequate postdeprivation remedies--either by statute or through
the common-law tort remedies available in its courts--no claim of
a violation of procedural due process can be brought under § 1983
against the state officials whose random and unauthorized conduct
occasioned the deprivation.").

of a state law postdeprivation remedy--be it a breach of contract claim or a claim for judicial review of administrative action-- does not moot an otherwise ripe, federal procedural due process claim. The district court took note of the argument but chose not to address it. Contrary to Lawless's argument, neither the Supreme Court nor this Court has clearly established that the membership of a municipal board that conducts a pretermination proceeding must, independent of state law, arrange for a postdeprivation hearing before a neutral official whenever colorable allegations of bias have been or might be raised against them but the pretermination hearing otherwise met the full complement of Loudermill requirements.[7]

Furthermore, it is not clearly established in this circuit that postdeprivation remedies available under Massachusetts law are inadequate to serve as a check against biased pretermination tribunals that honor Loudermill. While this Court has explained that a federal claim for a procedural due process violation is not automatically negated by the availability of a state law breach of contract claim, see Clukey v. Town of Camden, 717 F.3d 52, 61 (1st Cir. 2013) (collecting cases), in such cases underlying

---

[7] Lawless observes that the Appellants did not swear the witnesses, deliberate before voting, or issue findings of fact. However, these attributes were not itemized in Loudermill and Lawless has not identified any within-circuit authority that would require them. In any event, "Ms. Lawless does not contend that any of these, standing alone, [is] dispositive of this instant appeal." Brief of Appellee at 22.

- 16 -

process deficiencies were manifest. See, e.g., id. at 60 (finding that the plaintiff did not receive "notice of any kind whatsoever" (emphasis in original)); Concepcion Chaparro v. Ruiz-Hernandez, 607 F.3d 261, 266 (1st Cir. 2010) (involving a stipulation that no pretermination process was afforded); Cotnoir v. Univ. of Maine Sys., 35 F.3d 6, 11-12 (1st Cir. 1994) (explaining that the summary judgment record reflected inadequate notice of both the charges and the proposed employment consequences and that there was no predeprivation reveal of the evidence used to justify termination); Collins v. Marina-Martinez, 894 F.2d 474, 480 (1st Cir. 1990) (explaining that the plaintiff "had no prior inkling of what type of information would be requested . . . [;] [n]o specification of charges . . . [;] no documents available to him[; and received an] interview last[ing] for 30 minutes"). See also Loudermill, 470 U.S. at 548 (emphasizing the failure to afford the plaintiffs in the consolidated appeals the opportunity to respond). In any event, as far as the board-member Appellants are concerned[8], for reasons already explained a violation of clearly

---

[8] Because our appellate jurisdiction is founded on the qualified immunity question, the Town's potential municipal liability on the due process claim is not before us. We do observe, however, that "[t]he alleged procedural default cannot be the [Board's] failure to reach the right result. Such a holding would turn any procedural due process claim into a full judicial [or jury] review of discretionary administrative decisions." Acosta-Sepulveda, 889 F.2d at 12. The district court will need to iron out these concerns based primarily on a review of postdeprivation remedies available under Massachusetts law.

established law is not manifested by a genuine issue of personal

bias.[9]

---

[9] The district court cited contrary law from the Seventh Circuit, specifically Ryan v. Illinois Department of Children & Family Services, 185 F.3d 751, 762 (7th Cir. 1999) ("A plaintiff who can introduce evidence that the decision has already been made and any hearing would be a sham is entitled to go forward with a procedural due process claim."). While "[t]he Supreme Court has stated that clearly established law can be dictated by controlling authority or a robust consensus of persuasive authority," Irish v. Fowler, 979 F.3d 65, 77 (1st Cir. 2020), Lawless has not demonstrated to us that the Seventh Circuit's approach to bias allegations in the procedural due process context is part of a robust consensus of circuit authority, though she has identified simpatico Tenth Circuit authority, citing, inter alia, Bjorklund v. Miller, 467 Fed. App'x 758, 765 (10th Cir. 2012); but see Cacy v. City of Chickasha, 124 F.3d 216, 1997 WL 537864, at *5 n.6 (10th Cir. 1997) (Table) (citing Tenth Circuit cases to the contrary). We must also consider divergent views, such as those expressed in McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994) (en banc), in which the Eleventh Circuit held that "the appropriate forum" for allegations of a biased tribunal "is not federal court but a . . . state court possessing the ability to remedy the alleged procedural [bias] defect." Id. at 1561. The Eleventh Circuit reasoned that the "demonstration that the decisionmaker was biased . . . is not tantamount to a demonstration that there has been a denial of procedural due process [because] procedural due process violations do not become complete 'unless and until the state refuses to provide due process.'" Id. at 1562 (quoting Zinermon v. Burch, 494 U.S. 113, 123 (1990)). The Second Circuit appears to concur. See Green v. Dep't of Educ. of New York, 16 F.4th 1070, 1077 (2d Cir. 2021) ("Green's argument that the arbitrator was biased also fails because due process does not require that pre-termination hearings occur before a neutral adjudicator. Even if Green's pre-termination hearing was imperfect, the availability of a state-court proceeding to challenge the arbitration decision provided a wholly adequate post-deprivation hearing for due process purposes." (internal quotation marks and citations omitted)). There also appears to be a wider consensus among sister circuits that direct administrative and/or state court postdeprivation review suffices. McDaniels v. Flick, 59 F.3d 446, 458-60 (3d Cir. 1995); Duchesne v. Williams, 849 F.2d 1004, 1006 (6th Cir. 1988) (en banc), cert. denied, 489 U.S. 1081 (1989); Schaper v. City of Huntsville, 813 F.2d 709, 715-16 (5th Cir. 1987); see also Riggins

- 18 -

**III.**

The district court's order denying summary judgment on the federal claims against appellants is reversed, and the case is remanded for further proceedings.

---

v. <u>Bd. of Regents of Univ. of Nebraska</u>, 790 F.2d 707, 711-12 (8th Cir. 1986) (availability of impartial post-termination grievance procedure sufficient to provide procedural due process despite lack of ability for employee to cross-examine adverse witnesses at any stage).