**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1335

_____

STEWART MERRITTS, JR.,
                                        Appellant
v.

LESLIE RICHARDS, in both her official and individual
capacity as an official of the Pennsylvania Department of
Transportation; EDWARD BETTWY, in both his official and
individual capacity as an official of the Pennsylvania
Department of Transportation; MARK CHAPPELL, in both
his official and individual capacity as an official of the
Pennsylvania Department of Transportation;
PENNSYLVANIA DEPARTMENT OF
TRANSPORTATION; COMMONWEALTH OF
PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 3-18-cv-00212)
District Judge:  Honorable Kim R. Gibson


Argued: January 12, 2021
Before:  AMBRO\*, KRAUSE, and PHIPPS, *Circuit Judges*.

---

\* Judge Ambro took senior status on February 6, 2023.

(Filed: March 16, 2023)
_____

Stewart Merritts, Jr.
39947 Rivers Edge Lane
Lovettsville, VA 20180

    *Pro Se Appellant*

Johanna Dennehy
John L. Jacobus
Laura A. Lane-Steele     **[ARGUED]**
Alice E. Loughran
STEPTOE & JOHNSON
1330 Connecticut Avenue, N.W.
Washington, DC 20036

    *Court-Appointed Amici Curiae in Support of Appellant*
    *Stewart Merritts, Jr.*

Anthony T. Kovalchick
Kemal A. Mericli
Daniel B. Mullen
OFFICE OF ATTORNEY GENERAL OF PENNSYLVANIA
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

Caleb C. Enerson     **[ARGUED]**
PENNSYLVANIA DEPARTMENT OF LABOR & INDUSTRY
Office of General Counsel
651 Boas Street
10th Floor
Harrisburg, PA 17121

    *Counsel for Appellees Leslie Richards, Edward*
    *Bettwy, Mark Chappell, Pennsylvania Department of*
    *Transportation, and Commonwealth of Pennsylvania*

_____

OPINION OF THE COURT

_____

PHIPPS, *Circuit Judge.*

U.S. Route 22 spans about 650 miles, from Newark, New Jersey in the east, through Pennsylvania and West Virginia, into Ohio, with a western terminus in Cincinnati. To improve a one-mile stretch of the highway in Frankstown Township, Pennsylvania, outside of Altoona, the Pennsylvania Department of Transportation, commonly referred to as 'PennDOT,' sought two right-of-way easements from a nearby parcel of land for new drainage pipes and their installation. Together, the easements covered less than one-tenth of an acre, but the property owner, Stewart Merritts, Jr., a citizen of Virginia, opposed those encumbrances on his land. PennDOT initiated a condemnation action, and over Merritts's objections, it acquired title to and possession of the easements.

With no success in that state-court proceeding, Merritts commenced this suit in District Court claiming that PennDOT's acquisition of the easements and the compensation offered for them violates the U.S. Constitution and Pennsylvania law. None of his claims got far in District Court. In response to a motion to dismiss by the defendants – Pennsylvania, PennDOT, and three PennDOT officials in their official and individual capacities – the District Court dismissed all claims with prejudice, some based on Eleventh Amendment immunity, the remainder under *Burford* abstention, a doctrine that protects "complex state administrative processes from undue federal interference." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI)*, 491 U.S. 250, 362 (1989).

3

Through this timely appeal, Merritts challenges the dismissal of some of his claims for constitutional violations, which he brought under 42 U.S.C. § 1983. He argues that his § 1983 claims for injunctive and declaratory relief against the PennDOT officials in their official capacities should have survived dismissal under the Eleventh Amendment due to the *Ex parte Young* exception. He also contends that the District Court erred in dismissing his § 1983 claims for damages against the PennDOT officials in their individual capacities under *Burford* abstention. Through supplemental briefing, the parties have also addressed whether any of Merritts's § 1983 claims against the PennDOT officials in their individual capacities are jurisdictionally barred under *Rooker-Feldman* as impermissible appeals of state-court judgments.

On *de novo* review, Merritts's § 1983 claims for damages against the PennDOT officials in their individual capacities for a denial of just compensation should not have been dismissed. But the remainder of his § 1983 claims cannot proceed in District Court. The *Ex parte Young* exception does not allow Merritts's claims for injunctive and declaratory relief against the PennDOT officials in their official capacities because he does not seek prospective relief from an ongoing violation. Merritts's § 1983 claims for damages against the PennDOT officials in their individual capacities for allegedly unlawfully acquiring the easements for PennDOT cannot be dismissed under *Burford* abstention, but they are jurisdictionally barred under *Rooker-Feldman* because they seek impermissible review and rejection of the judgment in the condemnation proceeding. Although several of his § 1983 claims needed to be dismissed on Eleventh Amendment and *Rooker-Feldman* grounds, those dismissals should have been without prejudice. Thus, we will vacate the District Court's judgment and remand with instructions to adjudicate Merritts's § 1983 just-compensation-related claims for damages against the PennDOT officials in their individual capacities and to dismiss the remainder of his claims without prejudice.

4

# I. BACKGROUND

In 2016, as part of improving U.S. Route 22 near Canoe Creek State Park in Blair County, PennDOT sought to modernize the Flowing Springs Road intersection. Part of that project involved replacing the existing drainage pipes with wider ones. To do so, PennDOT sought two easements on Merritts's one-and-a-half-acre property: a drainage easement with an area of 1,150 square feet and a two-year construction easement with an area of 2,896 square feet. PennDOT offered $400 for the first easement and $100 for the second. Merritts rejected those offers, so PennDOT commenced an *in rem* condemnation action in the Court of Common Pleas for Blair County. To initiate that proceeding, PennDOT filed a declaration of taking, which, when coupled with the offer to pay compensation, conferred title to the easements to PennDOT and enabled it to later obtain a writ of possession. *See* 26 Pa. Cons. Stat. §§ 302, 307(a).

Merritts disputed the declaration of taking by filing preliminary objections. Procedurally, those objections are the exclusive means in a condemnation action in Pennsylvania court for challenging a taking and the transfer of title, *see id.* § 306(a)(3); *W. Whiteland Assocs. v. Pa. Dep't of Transp.*, 690 A.2d 1266, 1268 & n.1 (Pa. Commw. Ct. 1997), but they may not be used to contest the amount of compensation offered, *see* 26 Pa. Cons. Stat. § 306(b); *In re Condemnation by Pa. Dep't of Transp., of Right of Way for State Route 79, Section W10*, 798 A.2d 725, 731–32 (Pa. 2002). Pennsylvania law instead permits a property owner to dispute the amount of compensation by filing a petition for the appointment of viewers to assess the value of the condemned property, but Merritts did not file such a petition. *See* 26 Pa. Cons. Stat. § 502; *see also id.* § 504(a)(1) (requiring a court to appoint three viewers).

After holding an evidentiary hearing on Merritts's preliminary objections, the Common Pleas Court overruled them and granted PennDOT a writ of possession. On appeal,

the Commonwealth Court affirmed that judgment, and Merritts let lapse the time for petitioning the Pennsylvania Supreme Court to review that decision. *See* Pa. R. App. P. 1113(a) (allowing thirty days for such a petition).[1]

Merritts then sought federal-court review of the Commonwealth Court's order. Thirty days after that order, he removed the case to the United States District Court for the Western District of Pennsylvania. *See In re Condemnation by Pa. Dep't of Transp., of Right-of-Way for State Route 0022, Section 034*, 2018 WL 4100032, at \*1 (W.D. Pa. Aug. 28, 2018). But the thirty days permitted for removal starts upon a defendant's receipt of the initial pleading or summons – not upon an adverse order from a state appellate court. *See* 28 U.S.C. § 1446(b)(1). PennDOT, however, did not object within the thirty days permitted for challenging the untimeliness of the removal. *See In re Right-of-Way for State Route 0022*, 2018 WL 4100032, at \*2; *see also* 28 U.S.C. § 1447(c). Instead, it moved to dismiss the removed action. *See In re Right-of-Way for State Route 0022*, 2018 WL 4100032, at \*1. The District Court granted that motion principally on *Rooker-Feldman* grounds and remanded the case to state court. *See id.* at \*3; *see also id.* at \*4–5 (identifying *Burford* abstention and the well-pleaded complaint rule as alternative bases for dismissal). After moving unsuccessfully for reconsideration, *see In re Condemnation by Pa. Dep't of Transp. of Right-of-Way for State Route 0022, Section 034, in the Twp. of Frankstown*, 351 F. Supp. 3d 943, 947 (W.D. Pa. 2018), Merritts appealed, and this Court dismissed his case for lack of appellate jurisdiction. *See In re Condemnation by Pa. Dep't of Transp., of Right-of-Way for State Route 022, Section 034, in the Twp. of Frankstown*, 2019 WL 13220103, at \*1 (3d Cir. June 10,

---

[1] Much later, after he filed this appeal, Merritts unsuccessfully petitioned the Pennsylvania Supreme Court for leave to file an out-of-time petition for review of the Commonwealth Court's decision.

2019); *see also* 28 U.S.C. § 1447(d); *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 222 (3d Cir. 1995).

Having lost his removal gambit in the condemnation action, Merritts filed this suit against the Commonwealth of Pennsylvania, PennDOT, and three PennDOT officials in their official and individual capacities. His complaint included several claims under 42 U.S.C. § 1983 for alleged violations of his constitutional rights for which he sought $500,000 in compensatory damages and $2 million in punitive damages, as well as declaratory and injunctive relief. Many of those claims challenged PennDOT's acquisition of the easements: Merritts asserted that it was an unlawful taking, an unreasonable seizure, and a violation of substantive and procedural due process. He also claimed that the amount of compensation that PennDOT offered for the easements was unjust and that the defendants conspired to offer him a deficient amount. In addition to those § 1983 claims, Merritts pursued an array of claims under Pennsylvania law, seeking the same relief.[2]

The defendants moved to dismiss the case for a lack of subject-matter jurisdiction and for a failure to state a claim for relief. The District Court granted that motion and dismissed Merritts's complaint with prejudice. *Merritts v. Richards*, 2019 WL 176182, at *7 (W.D. Pa. Jan. 11, 2019). It rejected the claims against the Commonwealth, PennDOT, and the PennDOT officials in their official capacities due to Eleventh Amendment immunity. *Id.* at *3–6. And it denied the

---

[2] Those claims were for negligence, gross negligence, conversion, trespass, civil conspiracy, and violations of Article I, § 1 and § 8 of the Pennsylvania Constitution. In their motion to dismiss, the defendants did not specifically attack the plausibility of any of these claims, nor did they address whether, as a matter of law, Pennsylvania recognizes a freestanding civil cause of action for violations of any provisions of its constitution.

remaining individual-capacity claims against the PennDOT officials under *Burford* abstention. *Id.* at *6–7.

Merritts timely appealed that final order, bringing the case within this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291. Although he had counsel in District Court, Merritts represents himself on appeal. His opening brief challenged two facets of the District Court's judgment. First, it invoked the *Ex parte Young* exception to argue that the claims for declaratory and injunctive relief against the PennDOT officials should have survived dismissal. Second, it disputed the dismissal of the § 1983 claims for damages against the PennDOT officials in their individual capacities under *Burford* abstention.

Following the briefing of those issues, we appointed amicus counsel to argue in favor of reversing the District Court's judgment. With the benefit of the participation of amicus counsel,[3] the panel also requested supplemental briefing on three topics: *Rooker-Feldman*, claim preclusion, and the effect (if any) of the Supreme Court's intervening decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), on the availability of sovereign immunity for federal takings claims.

## II. DISCUSSION

### A. Merritts's Claims for Injunctive and Declaratory Relief Against the PennDOT Officials Are Not Permitted under *Ex parte Young*.

Under the *Ex parte Young* exception, Eleventh Amendment immunity gives way so that a state official may, under certain conditions, be sued in federal court in his or her official capacity by a citizen of another state for injunctive or declaratory relief. *See Ex parte Young*, 209 U.S. 123, 155–56

---

[3] We express gratitude for the *pro bono* services contributed by appointed amicus counsel in this case.

(1908); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997). Relying on that doctrine, Merritts seeks to enjoin the three PennDOT officials in several respects: from claiming ownership to his land; from physically intruding onto the land; from denying him just compensation; and from otherwise interfering with his property rights. Merritts also seeks a declaratory judgment that his federal constitutional rights have been violated. But for the *Ex parte Young* exception to apply, there must be both an ongoing violation of federal law and a request for relief that can be properly characterized as prospective. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Merritts's claims do not satisfy either of those requirements.

First, there is no ongoing violation of federal law. Merritts pursues injunctive and declaratory relief based on two claimed past violations of federal law: acquiring the easements without justification and not providing just compensation. Although those earlier actions may have present effect, that does not mean that they are ongoing. *See Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . . ."). Here, after Merritts refused the offer of $500 for the easements, PennDOT acquired them through a condemnation proceeding that concluded before this lawsuit was filed. The lingering effects of that discrete past action do not convert it into an ongoing violation.

Second, Merritts does not request prospective relief. By seeking an injunction to cure past injuries – PennDOT's alleged wrongful acquisition of the easements and the alleged lack of just compensation – Merritts asks for a reparative injunction. *See* Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies* § 2.9(1) (3d ed. 2018) ("The reparative injunction requires defendant to restore plaintiff to a preexisting entitlement."). Such an injunction cannot be fairly

9

characterized as prospective. *See Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (refusing to extend *Ex parte Young* to claims that amounted to monetary relief for past wrongs even when stylized as "equitable restitution"); *see also Coeur d'Alene*, 521 U.S. at 287–88 (declining to apply *Ex parte Young* to a request to enjoin a state from continually using and interfering with lands). For similar reasons, Merritts's request for a declaratory judgment also fails to seek prospective relief. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) ("[T]he issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.").

Without meeting either of the *Ex parte Young* conditions, the Eleventh Amendment prevents Merritts, himself a citizen of Virginia, from bringing his claims against the PennDOT officials in their official capacities for injunctive and declaratory relief in federal court. *See* U.S. Const. amend. XI. But Eleventh Amendment immunity is a "threshold, nonmerits issue" that "does not entail any assumption by the court of substantive law-declaring power," *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 433 (2007) (internal quotation marks omitted), and a dismissal on that basis, like dismissals for lack of jurisdiction, should normally be without prejudice. *See Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 262 (3d Cir. 2022). Thus, the dismissals of the claims against Pennsylvania, PennDOT, and the PennDOT officials in their official capacities should have been without prejudice. Accordingly, we will vacate the District Court's order of dismissal with instructions on remand to dismiss the claims against these parties without prejudice.[4]

---

[4] Because a dismissal 'with prejudice' is generally "an appealable final order under § 1291," district courts may be drawn to that phrase to signal that a ruling on a threshold issue

## B. The District Court Erred in Abstaining under *Burford.*

The District Court relied on *Burford* abstention to dismiss all of Merritts's § 1983 claims for damages against the PennDOT officials in their individual capacities. *See generally Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Merritts now argues that the District Court erred in doing so. He is correct.

The District Court overextended *Burford* abstention, treating it as encompassing any challenge to the exercise of a state's eminent domain power. Although eminent domain is "intimately involved with sovereign prerogative," that alone does not suffice for *Burford* abstention. *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959). Instead, *Burford* abstention protects "complex state administrative processes

---

is a final, appealable order. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 244 (3d Cir. 2013). But that practice distances the term 'with prejudice' from its primary function, which is to indicate that a judgment has preclusive effects. *See Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) ("A dismissal with prejudice 'operates as an adjudication on the merits,' so it ordinarily precludes future claims." (quoting *Landon v. Hunt*, 977 F.2d 829, 832–33 (3d Cir. 1992))). And dismissals on threshold grounds, while potentially final orders for purposes of appellate review, *see* 28 U.S.C. § 1291, typically should not have preclusive effects. *See Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 164 (3d Cir. 2017); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2369 (4th ed. 2022) (explaining that a "dismissal for lack of jurisdiction, as is true of various other threshold matters, is not an adjudication of a claim's merits and thus dismissing with prejudice would be premature"). Consequently, a dismissal with prejudice on a threshold ground should ordinarily be vacated and remanded with instructions for the claim to be dismissed without prejudice. *See Aldossari*, 49 F.4th at 262.

11

from undue federal interference" in two specific circumstances: "when there are 'difficult questions of state law bearing on policy problems of substantial public import" or when federal review would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361–62 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)); *see Matusow v. Trans-Cnty. Title Agency, LLC*, 545 F.3d 241, 247–48 (3d Cir. 2008). But even in those situations, abstention is still "an extraordinary and narrow exception to the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Ky. W. Va. Gas Co. v. Pa. Pub. Util. Comm'n*, 791 F.2d 1111, 1114 (3d Cir. 1986) (quoting *Colo. River*, 424 U.S. at 817).

Consistent with that scope, *Burford* abstention does not allow a federal court to dismiss claims for damages. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) ("[W]hile we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions."). Abstention doctrines are rooted in federal courts' historical equitable powers, and when a federal plaintiff prays for damages, the equitable discretion upon which abstention rests does not permit dismissal. *See County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 190 (1959) (reversing the dismissal of a just compensation claim on abstention grounds). *But cf. Thibodaux*, 360 U.S. at 30 (affirming the stay of a just compensation suit pending the resolution of a state challenge). Because Merritts's § 1983 claims against the PennDOT officials in their individual capacities seek damages, they cannot be dismissed on abstention grounds. *See Quackenbush*, 517 U.S. at 721.

12

**C. Under *Rooker-Feldman*, Merritts's § 1983 Claims Related to the Unlawful Acquisition of the Easements Must Be Dismissed.**

The *Rooker-Feldman* doctrine prevents district courts from mistakenly relying on their original jurisdiction to engage in appellate review of state-court orders. *See Verizon*, 535 U.S. at 644 n.3 ("The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme] Court . . . ." (citing 28 U.S.C. § 1257(a))); *ASARCO Inc. v. Kadish*, 490 U.S. 605, 622 (1989) ("The *Rooker-Feldman* doctrine interprets 28 U.S.C. § 1257 as ordinarily barring direct review in the lower federal courts of a decision reached by the highest state court, for such authority is vested solely in this Court."). The doctrine's namesake cases – *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) – supply four conditions, which, when all satisfied, require the dismissal of a claim for lack of jurisdiction. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Great W. Mining & Min. Corp. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (interpreting *Exxon Mobil* as setting forth four *Rooker-Feldman* requirements for appellate jurisdiction). Those four conditions may be evaluated in any sequence, and an efficient approach here is to analyze the two procedural conditions before the two substantive conditions. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). In that order, the necessary conditions for dismissal on *Rooker-Feldman* grounds are the following:

1. The federal plaintiff must lose in a state-court judicial proceeding;
2. The state-court judgment or decree must be rendered before the federal action was filed;

13

3. The federal plaintiff must invite the review and rejection of the state-court judgment; and
4. The federal plaintiff must complain of injuries caused by the state-court judgment.

*See Exxon Mobil*, 544 U.S. at 284; *Great W. Mining*, 615 F.3d at 166.

For the reasons below, Merritts's § 1983 claims for damages premised on the allegedly unlawful acquisition of the easements meet the four conditions for dismissal under *Rooker-Feldman*, but his claims for denial of just compensation and conspiracy to deny just compensation do not.

### 1. State-Court Loser Status

One condition for *Rooker-Feldman* dismissal is that the federal plaintiff must be a state-court loser. At the outset, this requirement limits appellate jurisdiction to the review of proceedings that were judicial in character, and not "legislative, ministerial, or administrative" decisions. *Feldman*, 460 U.S. at 479. From there, as a general rule, the federal plaintiff must be a party to such a state-court proceeding and have received an adverse ruling. *See Lance v. Dennis*, 546 U.S. 459, 464 (2006) (per curiam); *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994); *Vuyanich v. Smithton Borough*, 5 F.4th 379, 388 (3d Cir. 2021); *cf. Karcher v. May*, 484 U.S. 72, 77 (1987) ("[T]he general rule [is] that one who is not a party or has not been treated as a party to a judgment has no right to appeal therefrom."). But in limited instances, a non-party to the state-court judicial proceeding may be a state-court loser for purposes of *Rooker-Feldman*. That may occur, for example, in subpoena litigation: if a state court rules against a non-party with respect to a subpoena, that non-party may be a state-court loser. *Cf. Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 461–62 (5th Cir. 2004). A

14

non-party can also qualify as a state-court loser in other situations, such as in the context of successor liability when a judgment of a state court inflicts precisely the same legal injury on a party and a non-party who is in a position to challenge that ruling. *See Lance*, 546 U.S. at 466 n.2; *Vuyanich*, 5 F.4th at 388. But these exceptions are not coextensive with privity principles under *res judicata*, and orthodox privity with a losing party in state-court is not an automatic proxy for status as a state-court loser under *Rooker-Feldman*. *See Lance*, 546 U.S. at 466; *see also Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 & n.19 (1955) (identifying three "orthodox categories of privies" as "those who control an action although not parties to it . . . ; those whose interests are represented by a party to the action . . . ; [and] successors in interest" (quoting Restatement (First) of Judgments § 83 cmt. a (1942))).

Merritts is a state-court loser with respect to his claims for damages under § 1983 premised on PennDOT's allegedly unlawful acquisition of the easements. The *in rem* condemnation action qualifies as a state-court judicial proceeding. *See Feldman*, 460 U.S. at 477 ("A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908))). And PennDOT prevailed in that proceeding – it obtained title to and a writ of possession for the two easements that it previously lacked. Although that was an *in rem* action to which Merritts was not a party, it still determined the status of his property with respect to all possible interest holders, including him as owner. *See* Restatement (First) of Judgments §§ 2, 73; *see also Pennoyer v. Neff*, 95 U.S. 714, 727 (1877) ("The law assumes that property is always in the possession of its owner . . . ."). Since the state-court ruling in favor of PennDOT in the *in rem* action had the same legal consequences for Merritts as for his property, he qualifies as a state-court loser for purposes of his § 1983 claims that are premised on the unlawful acquisition of the easements. *See Dorce v. City of New York*, 2 F.4th 82, 102 (2d Cir. 2021) ("Someone who loses

15

an ownership interest in property through a state in rem foreclosure proceeding against the property has lost in state court.").

But Merritts is not a state-court loser with respect to his just-compensation and conspiracy-to-deny-just-compensation claims. Those claims hinge on a denial of just compensation,[5] and because the obligation to provide such compensation arises upon a taking, these claims actually depend on the *correctness* of the judgment in the condemnation action. *See Knick*, 139 S. Ct. at 2172 ("[A] property owner acquires an irrevocable right to just compensation immediately upon a taking."). Also, as a matter of Pennsylvania procedure, just compensation cannot be adjudicated in a condemnation proceeding. *See* 26 Pa. Cons. Stat. § 306(b) ("Issues of compensation may not be raised by preliminary objections."); *In re Right of Way for State Route 79*, 798 A.2d at 731 (reserving issues of compensation for "the second distinct proceeding," the inverse condemnation action (quoting *W. Whiteland Assocs.*, 690 A.2d at 1268)). Because the state-court ruling in the condemnation proceeding did not (and could not) resolve any just compensation claims, Merritts cannot be a state-court loser with respect to those claims.[6]

---

[5] Conspiracy under § 1983 is not a freestanding claim, *cf.* 42 U.S.C. § 1985(3), but only a means of establishing vicarious liability over a person who, absent the conspiracy, would not be acting under color of state law. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999). Thus, Merritts cannot succeed on his § 1983 claim alleging a conspiracy to deny just compensation without establishing a denial of just compensation. *See Dondero v. Lower Milford Twp.*, 5 F.4th 355, 362 n.1 (3d Cir. 2021).

[6] Another consequence of the inability to adjudicate just-compensation claims in the condemnation action is that those claims are not precluded under Pennsylvania law. *See Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995) ("*Res judicata* applies not only to claims actually litigated, but also

Without satisfying this condition, *Rooker-Feldman* does not require the dismissal of the § 1983 claims against the individual-capacity defendants related to just compensation.[7]

---

to claims which could have been litigated during the first proceeding if they were part of the same cause of action.”); *Wilmington Tr., Nat'l Ass'n v. Unknown Heirs*, 219 A.3d 1173, 1179 (Pa. Super. Ct. 2019) (“Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit on the same cause of action or one that could have been brought in the prior action.”); *see also* 28 U.S.C. § 1738; *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006) (“In determining the applicability of principles of res judicata, we must give the same preclusive effect to the judgment in the common pleas court case that the courts in Pennsylvania, the state in which the judgment was entered, would give.”).

[7] The holding that these claims are not jurisdictionally foreclosed by *Rooker-Feldman* does not validate the legal viability of just-compensation claims under § 1983 against individual-capacity defendants who did not personally acquire any interests in the property taken. That is an open question in this Circuit and one on which other courts have reached different conclusions. *Compare Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 25–26 (1st Cir. 2007) (declining to exclude individual-capacity suits for denial of just compensation from the reach of § 1983 despite a recognition that the amount of liability in such suits would be “ruinous and probably uncollectible”), *with Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) (finding no support for the contention “that an individual may commit, and be liable in damages for, a ‘taking’ under the fifth amendment”). That issue, along with qualified immunity and the type of damages available for individual-capacity just compensation claims, if actionable under § 1983, *see generally Carey v. Piphus*, 435 U.S. 247,

## 2. Prior State-Court Judgment

Another necessary condition for dismissal under *Rooker-Feldman* is that the federal suit must have been filed after the state-court judgment or decree was rendered. *See Lance*, 546 U.S. at 460; *Great W. Mining*, 615 F.3d at 166. This Circuit, like others, has required an "effectively final" state-court judgment to precede the federal suit. *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 459 (3d Cir. 2019); *see generally RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 400–01 (6th Cir. 2021) (Clay, J., dissenting) (collecting cases from other circuits adopting the same approach).[8] And at the time of this suit, the state-court judgment in the *in rem* action had become effectively final because the time to appeal in state court had expired. *See Malhan*, 938 F.3d at 459. Merritts had until March 28, 2018, to appeal the order of the Commonwealth Court to the Pennsylvania Supreme Court, and

259 (1978) (explaining that remedies for violations of constitutional rights "should be tailored to the interests protected by the particular right in question" and allowing only nominal damages), remain for the parties to address in the first instance in District Court.

[8] The 'effectively final' standard functions as a waive-or-exhaust rule for federal claims in state courts, such that a state-court judgment becomes effectively final in three scenarios: (i) the highest state court has issued a terminal ruling, *see Malhan*, 938 F.3d at 459; (ii) a lower state court has issued a ruling for which the time to appeal has expired, or the parties have voluntarily terminated the case, *see id.*; or (iii) all questions of federal law have been resolved by the highest state court, notwithstanding any surviving state law or factual issues, *see id.* at 459–60; *see also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 477–83 (1975) (treating as final for purposes of § 1257 four categories of cases "in which the highest court of a State has finally determined the federal issue present in a particular case, but in which there are further proceedings in the lower state courts to come").

he missed that deadline. *See In re Condemnation by Dep't of Transportation, of Right-Of-Way for State Route 0022, Section 034 in Twp. of Frankstown v. Commonwealth*, 194 A.3d 722, 737 (Pa. Commw. Ct. 2018) (order issued Feb. 26, 2018); Pa. R. App. P. 1113(a) (providing 30 days to appeal a Commonwealth Court judgment). Months after the expiration of that appeal period, on October 22, 2018, he commenced this federal action. At that time, the state-court judgment was effectively final.[9] *See Malhan*, 938 F.3d at 459.

### 3. The Invitation to Review and Reject a State-Court Judgment

Dismissal under *Rooker-Feldman* also requires that the claim invite review and rejection of a state-court ruling. *See Exxon Mobil*, 544 U.S. at 284; *In re Phila. Ent. & Dev. Partners*, 879 F.3d 492, 503 (3d Cir. 2018). This condition is satisfied for claims that seek "to determine whether [the state court] reached its result in accordance with law," *Great W. Mining*, 615 F.3d at 169 (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)), or "to have the state-court decisions undone or declared null and void," *Geness v. Cox*, 902 F.3d 344, 360 (3d Cir. 2018) (quoting *Great W. Mining*, 615 F.3d at 173). *See Rooker*, 263 U.S. at 416 (holding that a federal district court did not have jurisdiction to adjudicate a constitutional challenge to a state-court judgment because to declare the state-court order void would require "an exercise of appellate jurisdiction," and district courts possess "strictly original" jurisdiction).

---

[9] This conclusion is not altered by the later out-of-time petition that Merritts made to the Pennsylvania Supreme Court on October 17, 2019. Although the Pennsylvania Supreme Court allows *nunc pro tunc* petitions in limited circumstances, *see* Pa. R. App. P. 1113(d), the possibility of such a filing does not change the effective finality of the Commonwealth Court's order. *See Malhan*, 938 F.3d at 459.

Merritts's § 1983 claims premised on allegations that PennDOT unlawfully acquired the easements satisfy this condition because they seek review and rejection of the judgment in the condemnation proceeding. Each of those claims – for an unlawful taking, an illegal seizure, and deprivation of property without substantive or procedural due process – depends on PennDOT lacking title to and possession of the easements. For example, if PennDOT had those property interests, it could not take them unlawfully. Likewise, it could not illegally seize a property interest that it already possessed. Nor could PennDOT deprive Merritts of a property interest that he did not own without due process. But contrary to the premise of those claims, PennDOT legally acquired the easements through the condemnation proceeding. Thus, for any of those claims to succeed, the District Court would have to review and reject the legality of the judgment in the condemnation proceeding.

### 4. Legal Injuries Caused by the State-Court Judgment

The final condition for *Rooker-Feldman* dismissal is that a federal plaintiff must complain of a legal injury caused by the state-court ruling. *See Exxon Mobil*, 544 U.S. at 284; *Great W. Mining*, 615 F.3d at 166. And for Merritts's unlawful-acquisition claims under § 1983, the source of his legal injury is the judgment in the condemnation proceedings. As a result of that ruling, PennDOT acquired title to and possession of the two easements. Accordingly, a judicial ruling, not a prior independent action by PennDOT or its officials, caused Merritts's legal injuries related to the acquisition of the easements. Thus, this condition, like the three before it, is satisfied for Merritts's unlawful-acquisition claims, and they should have been jurisdictionally dismissed without prejudice. *See Sinochem*, 549 U.S. at 433.

### III.   CONCLUSION

For the foregoing reasons, we will vacate the District Court's judgment, and we will remand to the District Court with instructions to adjudicate the just-compensation-related § 1983 claims for damages against the PennDOT officials in their individual capacities and to dismiss all other claims without prejudice.